UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| OMNISOURCE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:08-CV-89 |
| | ) | |
| SIMS BROTHERS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

**I.  INTRODUCTION**

Before the Court is the Defendant Sims Brothers, Inc.'s Motion to Transfer Venue (Docket # 11), requesting pursuant to 28 U.S.C. § 1404(a) that the Court transfer this breach of contract dispute to the United States District Court for the Northern District of Ohio, Western Division, because, it asserts, it is clearly a more convenient forum that better serves the interests of justice.[1]  Plaintiff OmniSource Corporation, however, opposes the motion, contending that this Court, not the Ohio court, is the more convenient venue.  For the following reasons, Sims's motion to transfer will be GRANTED.

**II.  FACTUAL AND PROCEDURAL BACKGROUND**

For many years, Sims, an Ohio corporation with its principal place of business in Marion, Ohio, purchased and picked up scrap metal from Whirlpool Corporation's Marion, Ohio facility. (Fischer Aff. ¶ 2.)  In 2003, Whirlpool requested bids for the scrap metal contract, and the

---

[1] Diversity jurisdiction arises under 28 U.S.C. § 1331(a).

successful bid came from OmniSource, an Indiana corporation with its principal place of business in Fort Wayne, Indiana. (Fischer Aff. ¶ 3.)  Sims and OmniSource subsequently entered into a written contract wherein Sims agreed to purchase the Whirlpool scrap metal from OmniSource. (Fischer Aff. ¶ 4; Ustian Aff. ¶¶ 6, 7.)  Sims ultimately terminated that contract, which is not in dispute here. (Fischer Aff. ¶¶ 4, 5.)

In 2005, following these events, OmniSource's Executive Vice President of the Ferrous Division, James Ustian, traveled to Sims's Marion, Ohio, facility to discuss a new arrangement between the two companies regarding the Whirlpool scrap. (Marynowski Aff. ¶ 13; Ustian Aff. ¶ 8; Fischer Aff. ¶¶ 6, 7; Casey Aff. ¶ 6.)  Ustian negotiated primarily with then-Sims employee James Macaluso,[2] and they entered into an oral agreement. (Fischer Aff. ¶¶ 6, 7; Casey Aff. ¶ 6.) Under the terms of the oral agreement, Sims would no longer purchase the Whirlpool scrap but instead would pick it up on Omnisource's behalf from Whirlpool's Marion, Ohio, facility and transport it across town to Sims's facility. (Casey Aff. ¶ 4; Fischer Aff. ¶ 8; Ustian Aff. ¶ 8.) OmniSource would then make arrangements to ship the scrap by truck from Sims's facility to its customers. (Ustian Aff. ¶ 8; Fischer Aff. ¶ 8; Casey Aff. ¶ 9.)  Sims had no responsibility for the Whirlpool scrap after it left its facility. (Casey Aff. ¶ 9.)

Where the parties' understandings of the oral agreement's terms diverge, however, concerns the length of time that the Whirlpool scrap was to remain at Sims's facility.  According to Sims, OmniSource was to arrange for its shipment out within approximately twenty-four hours of its arrival at Sims's facility. (Casey Aff. ¶ 4; Fischer Aff. ¶ 8.)  Yet, per OmniSource's telling, Sims agreed to store the scrap at its facility until such time that OmniSource chose to

---

[2] Macaluso later left Sims's employ to work for OmniSource at its Mansfield, Ohio, office; he continued, however, to reside in Marion, Ohio. (Casey Aff. ¶ 6.)

2

ship it to its customers. (Ustian Aff. ¶ 8; Marynowski Aff. ¶ 4.)  In any event, after the onset of the oral agreement, purportedly a large pile of the scrap (occupying at times 30,000 square feet in diameter and measuring 30 feet high, according to Sims) accumulated on Sims's premises, causing Sims to believe that OmniSource was violating the terms of the oral agreement and "was impermissibly treating Sims'[s] facility as OmniSource's own storage warehouse." (Fischer Aff. ¶ 11.)  Several months later, ostensibly when scrap metal began selling at higher prices, OmniSource allegedly demanded that Sims immediately load many months' worth of scrap onto railcars, demands which Sims believed were "contrary to the terms of the [o]ral [a]greement and beyond Sims'[s] capabilities." (Fischer Aff. ¶ 12.)

Sims, however, was not the sole party disgruntled with the arrangement; at some point, OmniSource too voiced concerns to Sims, contending that a significant amount of its scrap was missing from Sims's facility and that Sims caused it a significant delay in its processing of the scrap. (Marynowksi Aff. ¶¶ 7-9.)  Ultimately, on March 4, 2008, OmniSource filed a complaint in the Allen County Circuit Court, alleging various state law claims against Sims arising out of the oral agreement, including breach of duty as bailee of the ferrous scrap, breach of contract, quantum merit, conversion, and treble damages. (Docket # 1.)  Sims removed the case to this Court on April 8, 2008 (Docket # 2), and on May 12, 2008, filed its answer, affirmative defenses, and various counterclaims against OmniSource (Docket # 10).  That same day, Sims filed the motion to transfer venue presently before the Court. (Docket # 11.)

In its motion to transfer, Sims asserts that this dispute will be more conveniently and efficiently adjudicated in the Northern District of Ohio because the oral agreement "was negotiated and performed entirely within Ohio." (Def.'s Mem. in Supp. of Mot. to Transfer

3

Venue ("Def.'s Br.") 6.)  On that score, Sims states that all six of the witnesses it expects to call concerning the oral agreement work and reside in Ohio. (Fischer Aff. ¶ 13.)  This includes four current Sims employees; one former employee, non-party witness, Macaluso; and one Omnisource employee, Ustian. (Fischer Aff. ¶ 13.)  Sims explains that Macaluso (the primary negotiator of the agreement for Sims who later went to work for OmniSource but still resides in Marion, Ohio) is now in the process of leaving OmniSource and moving to Cleveland, Ohio, a location beyond the scope of this Court's subpoena power. (Def.'s Reply In Supp. of Its Mot. to Transfer Venue ("Reply Br.") 1-2; Fischer Aff. ¶ 16; Casey Aff. ¶ 6.)  It further contends that Ustian, OmniSource's primary negotiator of the agreement, is an Ohio resident and works from OmniSource's Toledo, Ohio, office, explaining that it only contacted Ustian on one of two Ohio telephone numbers and had no Indiana contact information for him. (Fischer Aff. ¶ 15; Casey Aff. ¶ 10.)

Sims also reports that any documents generated in the course of the agreement are located in Ohio, admitting that it possesses "a couple thousand pages of documents" concerning the matter. (Fischer Aff. ¶ 14.)  In addition, Sims emphasizes that the alleged contractual breach and torts occurred in Ohio and that OmniSource expressly invoked provisions of Ohio law in its complaint, seeking recovery under the "Ohio conversion theory of damages" and alleging a cause of action for treble damages under the Ohio Revised Code. (Compl. ¶¶ 38, 47.)  In fact, Sims points out that OmniSource even asks for the return of property that is located in Ohio. (See Compl. ¶¶ 8-20.)

OmniSource, however, disputes Sims's assertion that the oral agreement was performed entirely in Ohio.  It maintains that its Fort Wayne personnel "administered" the agreement and

4

that its Toledo personnel "were not involved in it." (Marynowski Aff. ¶ 5.)  More specifically, OmniSource explains that its Fort Wayne personnel regularly contacted Sims to coordinate and arrange the shipping of the scrap to its customers, issued invoices and made payments, tracked inventory information, and generated thousands of pages of documents as a result of its agreement with Sims. (Marynowski Aff. ¶¶ 6, 10-13.)  In fact, it states that its records tracking the scrap inventory, the impact of the alleged delay in scrap delivery, and the value of the missing scrap are all located in Fort Wayne. (Marynowski ¶¶ 7-9.)

OmniSource also reports that eight of its nine expected witnesses reside in Fort Wayne, Indiana. (Marynowski Aff. ¶ 13.)  It further explains that though Ustian does indeed reside in Ohio, Sims's assumption about his working location is incorrect; Ustian is based out of OmniSource's Fort Wayne office and physically works out of that office approximately two days per week, working from its Toledo office just one to two days per month. (Ustian Aff. ¶ 3.)  In short, as OmniSource sees it, though "Sims'[s] performance was in Ohio, OmniSource's performance occurred entirely in Indiana." (Pl.'s Mem. in Opp'n to Def.'s Mot. to Transfer Venue ("Resp. Br.") 9.)

### III.  APPLICABLE LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  In determining whether to transfer an action, a Court conducts essentially the same analysis as if it were considering dismissal under the doctrine of *forum non conveniens*. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 264-65 (1981).  Yet, "§ 1404(a) transfers are different than dismissal on the ground of *forum non conveniens*[,]" because "[d]istrict courts were given

5

more discretion to transfer under § 1404(a) than they had to dismiss on grounds of *forum non conveniens*.³ *Id.*

Specifically, a party seeking transfer of a civil action must show that (1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interest of justice. *Boyd v. Snyder*, 44 F. Supp. 2d 966, 968 (N.D. Ill. 1999) (citing *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986)). The party moving for the transfer carries the "burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey,* 796 F.2d at 220*; see also K & F Mfg. Co. v. W. Litho Plate & Supply Co.*, 831 F. Supp. 661, 664 (N.D. Ind. 1993) ("Where transfer merely would shift convenience (and conversely, inconvenience) from one party to another, transfer should not be granted."). In that vein, the Seventh Circuit Court of Appeals has made clear that "a plaintiff's choice of forum is entitled to considerable deference," and "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *In re Nat'l Presto Indus.*, 347 F.3d 662, 663-64 (7th Cir. 2003) (citation and internal quote marks omitted).

"Although in considering a motion for transfer, the trial judge is limited to the three

---

³ In *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955), the United States Supreme Court explained this distinction:

> When Congress adopted § 1404(a), it intended to do more than just codify the existing law on forum non conveniens. . . . Congress, in writing § 1404(a) . . . was revising as well as codifying. The harshest result of the application of the old doctrine of forum non conveniens, dismissal of the action, was eliminated by the provision in § 1404(a) for transfer. When the harshest part of the doctrine is excised by statute, it can hardly be called mere codification. As a consequence, we believe that Congress, by the term 'for the convenience of parties and witnesses, in the interest of justice,' intended to permit courts to grant transfers upon a lesser showing of inconvenience. This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader.

factors specifically mentioned in § 1404(a), *viz*., the convenience of the parties, the convenience of the witnesses, and the interest of justice, these factors are best viewed as placeholders for a broader set of considerations, the contours of which turn upon the particular facts of each case." *Coffey*, 796 F.2d at 219 n.3 (citations omitted).  Accordingly, the first two factors are further divided into several "private interests": "(1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease and access to the sources of proof; (4) the convenience of the parties; and (5) the convenience of the witnesses." *Depuy Orthopaedics, Inc. v. Gault S. Bay, Inc*., No. 3:07-cv-425RM, 2007 WL 3407662, at *8 (N.D. Ind. Nov. 13, 2007) (citing *First Nat'l Bank v. El Camino Res., Ltd.*, 447 F. Supp. 2d 902, 911-12 (N.D. Ill. 2006)).

In addition, courts must also consider the "public interest," that is, the interests of justice. *Id*. at 10.  "This analysis focuses on the efficient administration of the court system, rather than the private considerations of the litigants. *Id*. (quoting *Amoco Oil Co. v. Mobil Oil Corp*., 90 F. Supp. 2d 958, 961 (N.D. Ill. 2000)).  "Public interest factors include the court's familiarity with the applicable law, the speed at which the case will proceed to trial, and the desirability of resolving controversies in their locale." *Id*. (quoting *First Nat'l Bank*, 447 F. Supp. 2d at 912) (internal quotations marks omitted).

## IV.  DISCUSSION

The Court will now analyze the particular circumstances in this action with respect to the relevant factors set forth *supra* to determine whether a change of venue is warranted.  Since the parties do not argue that venue is improper in either the transferor or transferee court,[4] we begin

---

[4] OmniSource concedes that this suit could have been brought in the Northern District of Ohio had it chosen to do so. (Resp. Br. 7 n.2.)  While Sims does not concede that venue is proper in this Court, it does not develop an argument that the Indiana forum is improper and, furthermore, acknowledges that this Court has recently held that in removed cases, 28 U.S.C. § 1441 automatically creates venue in the jurisdiction in which the case is

7

by examining the "private interests," that is, whether the transfer is for the convenience of the parties and witnesses.

### A.  The "Private Interests"

1.  <u>The Plaintiff's Choice of Forum</u>

The first factor described under the "private interests" is the plaintiff's choice of forum. Here, OmniSource chose to bring suit in Fort Wayne, Indiana, where its principal place of business is located.

"A plaintiff's choice of forum is generally given substantial weight, particularly when it is the plaintiff's home forum." *Moore v. Motor Coach Indus., Inc.*, 487 F. Supp. 2d 1003, 1006-07 (N.D. Ill. 2007).  "A plaintiff's choice of forum is afforded less deference, however, when another forum has a stronger relationship to the dispute or when the forum of plaintiff's choice has no significant connection to the situs of material events." *Id.* (citing *Chicago, Rock Island & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955)); *see also Depuy Orthopaedics*, 2007 WL 3407662, at *8-9, *Von Holdt v. Husky Injection Molding Sys.*, 887 F. Supp. 185, 188 (N.D. Ill. 1995).  If that is the case, "[p]laintiff's choice . . . becomes simply one factor among many to be considered." *Hyatt Corp. v. Pers. Comm. Indus. Ass'n*, No. 04 C 4656, 2004 WL 2931288, at *2 (N.D. Ill. Dec. 15, 2004) (internal quotation marks and citation omitted).

Therefore, the substantial weight that would be applied to OmniSource's choice of its home forum in this instance may be diminished by the dispute's connection with Ohio, if significant.  As a result, we will proceed to the second factor – the situs of material events – before definitively weighing OmniSource's choice of its home forum.

---

originally brought. (Def.'s Br. 5 n.3); *see Travel Supreme, Inc. v. NVER Enters., Inc*., No. 3:07CV194PPS, 2007 WL 2962641, at *7-8 (N.D. Ind. 2007).  Therefore, the Court need not further address this preliminary issue.

8

2.  The Situs of Material Events

In a breach of contract case, "the situs is where the business decisions causing the breach occurred." *Id.* at *3 (considering where the agreement was primarily negotiated and signed in determining the situs of material events).  Here, OmniSource does not dispute that the agreement at issue was negotiated entirely in Ohio primarily by its employee Ustian and Sims's then-employee Macaluso, who are both residents of Ohio.  Instead, it contests Sims's assertion that the agreement was "*performed* entirely within Ohio," (Def.'s Br. 6 (emphasis added)), emphasizing that OmniSource personnel "administered" the agreement from its Fort Wayne, Indiana, office (Resp. Br. 9).

More specifically, OmniSource contends that its personnel in Fort Wayne regularly contacted Sims personnel in Ohio to coordinate and arrange the shipping of scrap to OmniSource customers and to deal with issues that arose during the course of the agreement's performance. It further emphasizes that Sims issued invoices to OmniSource at its Fort Wayne office and that OmniSource made payment to Sims out of its Fort Wayne office.  In addition, OmniSource represents that it tracked inventory information from Fort Wayne and has "thousands of pages of documents" concerning the agreement in its Fort Wayne office.

Yet, despite OmniSource's contention, the contract's "administration" does not necessarily appear to be at the heart of this dispute.  In fact, the amount of missing scrap, 1,850 gross tons, is not even disputed between the parties. (*See* Compl. ¶¶ 17, 29; Fischer Aff. ¶ 20; Reply Br. 7.)  Rather, this dispute seems to center on the parties' understandings of the terms of the oral agreement; specifically, whether the agreement's terms required Sims to store the Whirlpool scrap at its Marion, Ohio, facility for longer than twenty-four hours.  This

9

determination will ostensibly turn on the events and communication that took place *during the agreement's negotiation* by Ustian and Macaluso in Ohio, more than on the "administration" of the agreement.

The location of the property at issue is also considered when determining whether to transfer an action. *See, e.g.*, *Rogan v. United States*, No. 2:07-CV-403-JVB, 2008 WL 282351, at *10-11 (N.D. Ind. Jan. 31, 2008) (considering physical location of property at issue in a motion to transfer); *Masterspas, Inc. v. Master Spas of Utah, Inc*., No. 1:05-CV-362-TS, 2006 WL 2524121, at *4 (N.D. Ind. Aug. 30, 2006) (considering location where product was manufactured when analyzing a motion to transfer). Here, the disputed property (that is, the Whirlpool scrap) is, or at least was, located in Ohio, not Indiana, and OmniSource specifically seeks the return of this property.

In sum, though OmniSource's Fort Wayne personnel may indeed have performed some ministerial duties under the agreement, it is clear that the agreement was negotiated and entered into in Ohio and that the dispute centers on property maintained in Ohio. Therefore, the second factor – the situs of material events – weighs more in favor of Sims than OmniSource.

On that score, the dispute's significant connection with Ohio serves to diminish the substantial weight that would otherwise be applied in OmniSource's favor to the first factor – OmniSource's choice of an Indiana forum. As a result, the Court will consider OmniSource's choice of forum as "simply one factor among many to be considered." *Hyatt Corp.*, 2004 WL 2931288 at *2.

    3. <u>The Relative Ease and Access to the Sources of Proof</u>

The next factor – the relative ease and access to the sources of proof – also seems to

weigh in favor of Sims, at least slightly so.  While each party claims that it has "thousands" of documents located in its home forum and each plans to call witnesses that reside in its preferred forum, there are at least two sources of proof that are unique to the Ohio forum.

First, as stated *supra*, the disputed property is, or at least was, located in Ohio, *not* Indiana.  Second, Sims makes a persuasive point that some of the services that Sims performed under the agreement took place on Whirlpool's property located in Ohio.  To the extent that any documents from Whirlpool become important in this case, Sims could only compel their production if this case is transferred to the Ohio forum because of this Court's 100-mile subpoena power.  *See* Fed. R. Civ. P. 45(b)(1)(A).

Therefore, the Ohio forum seemingly offers a greater ease and access to the sources of proof than the Indiana forum.

    4.  <u>The Convenience of the Parties and the Witnesses</u>

We will next turn to the remaining two factors under the "private interests" – the convenience of the parties and the witnesses.  As OmniSource sees it, a transfer to the Northern District of Ohio would create substantial inconvenience for OmniSource and its witnesses, while generating only slightly more convenience for Sims and its witnesses.

Specifically, OmniSource explains that the Northern District of Ohio in Toledo is 97.9 miles from Marion, Ohio, while the Northern District of Indiana in Fort Wayne is 127.8 miles from Marion; consequently, Sims has to travel regardless of the forum, and the transfer to Indiana would only add 30 miles to Sims's travels. (Shrader Aff. ¶ 4, Exs. 3, 4.)  In contrast, OmniSource has no travel if the case is litigated in Indiana, but if the case is transferred to Ohio, OmniSource would have to travel over 100 miles to litigate there. (*Id.*)  Therefore, OmniSource's

11

assertion that the transfer to Ohio may generate greater inconvenience to OmniSource than convenience for Sims has some merit.

Nonetheless, the convenience of the witnesses is "the most important factor in the transfer balance." *Abbott v. Lockheed Martin Corp.*, No. 06-cv-0701-MJR, 2007 WL 844903, at *3 (S.D. Ill. Mar. 20, 2007); *Kingsley v. Dixon Old People's Home Fund, Inc.*, No. 96 C 2464, 1996 WL 417548, at *2 (N.D. Ill. July 22, 1996). "Convenience considerations include, *inter alia*, the number of witnesses involved, travel distances and associated costs for these witnesses, the willingness of the witnesses to appear, or whether the witness is within the court's reach to compel appearance." *Hunter v. Big Rock Transp., Inc.*, No. 1:07-cv-1062-SEB-TAB, 2008 WL 1957775, at *2 (S.D. Ind. May 2, 2008).

Here, admittedly, eight of OmniSource's nine witnesses live in Fort Wayne.  If a transfer to Ohio is granted, they will have to undertake the inconvenience of travel and incur travel expenses they would not otherwise incur in the Indiana forum.  Five of Sims's six witnesses will have to travel and incur expenses regardless of forum since their Ohio residences are approximately 98 miles from the Northern District of Ohio and 128 miles from this Court.  Yet, "[i]n weighing the relative convenience of witnesses, the Court generally assigns little weight to the location of employee-witnesses.  Because these witnesses usually are within the control of the parties, they are likely to appear voluntarily in either forum." *Abbott*, 2007 WL 844903, at *3.   Furthermore, five of OmniSource's nine expected witnesses seem to possess similar knowledge pertaining to the "missing scrap" and its value. (Marynowski Aff. ¶ 13); *see AHP Sys., Inc. v. Cullman Ventures, Inc.*, No. 97 C 4947, 1997 WL 779108, at *3 (N.D. Ill. Dec. 10, 1997) ("Sheer numbers alone . . . do not accurately gauge the full extent of the witness

12

convenience factor."). OmniSource fails to explain why it needs so many witnesses to testify to essentially the same damages issue, especially when the amount of missing scrap is not even disputed. *See Masterspas, Inc.*, 2006 WL 2524121, at *4 ("Defendants do not indicate why it would be necessary for three different witnesses to testify on [the same] subject."); *Hanley v. Omarc, Inc.*, 6 F. Supp. 2d 770, 775 (N.D. Ill. 1998) ("The determination of whether a particular venue is more convenient for the witnesses should not turn on which party produces a longer witness list. Rather, the court must look to the nature and quality of the witnesses' testimony with respect to the issues of the case.").

More significantly, Ustian, OmniSource's key witness who can testify to the terms of the agreement, lives in the Toledo area. Therefore, even though he spends some of his time at the Fort Wayne OmniSource office, the Ohio forum would clearly be more convenient for him than the Indiana forum, which requires considerable drive time and a hotel stay. (Ustian Aff. ¶ 4.)

Moreover, most importantly, Macaluso, Sims's key non-party witness concerning Sims's understanding of the terms of the agreement, will be outside of this Court's subpoena power upon his move to Cleveland, as well as any witness from Whirlpool should Whirlpool's knowledge become relevant. "[T]he inability to compel the appearance of material, non-party witnesses weighs in favor of transfer." *Karrels v. Adolph Coors Co.*, 699 F. Supp. 172, 176 (N.D. Ill. 1988). In fact, "[t]he convenience of non-party witnesses is often viewed as *the most important factor* in the transfer analysis." *Anchor Wall Sys., Inc. v. R & D Concrete Prods., Inc.*, 55 F. Supp. 2d 871, 873 (N.D. Ill. 1999) (emphasis added); *see also Hunter*, 2008 WL 1957775, at *2; *Household Fin. Servs., Inc. v. Prestige Fin. Servs. Corp.*, No. 99 C 1756, 1999 WL 608705, at *2 (N.D. Ill. Aug. 6, 1999) (finding the "inability to compel the attendance of

13

material non-party witnesses *to be a crucial factor* militating in favor of transfer" (emphasis added)); *Greene Mfg. Co. v. Marquette Tool & Die Co., & Jackes-Evans Mfg. Co.*, No. 97 C 8857, 1998 WL 395155, at *3 (N.D. Ill. July 9, 1998); *Skill-Craft Enters., Inc. v. Astro Mfg., Inc.*, No. S90-141, 1990 WL 300705, at *6 (N.D. Ind. Dec. 3, 1990) ("The inability to compel the appearance of a material, non-party witness weighs heavily in favor of transfer.").

Therefore, though the sheer number of expected Fort Wayne witnesses exceeds the number of expected Ohio witnesses, the two seemingly key witnesses in this dispute, Ustian and Macaluso, each reside in Ohio, one of whom will soon be outside this Court's 100-mile subpoena power. *See Lawrence v. Swift Transp. Co.*, No. 1:07-cv-197-JDT-WTL, 2007 WL 3334788, at *4 (S.D. Ind. Nov 8, 2007) ("Case law cautions against doing a mere count to determine the overall convenience of the witnesses – the substance of the testimony matters."). As a result, the final factor weighs in favor of a transfer of this case to the Ohio forum.

In sum, three factors – the situs of material events, the relative ease and access to proof, and, most importantly, the convenience of the witnesses – weigh in favor of Sims and significantly outweigh the two factors favoring OmniSource, that is, OmniSource's choice of forum and the convenience of the parties. As a result, Sims has established that the "private interests" of the parties in this litigation will clearly be more conveniently served in the Northern District of Ohio.

### B. The "Public Interest"

We turn next to the final prong in the analysis of Sims's motion to transfer – the "public interest." As explained *supra*, the analysis of the "public interest" focuses on the efficient administration of the court system, rather than the private considerations of the litigants. *Depuy*

14

*Orthopaedics*, 2007 WL 3407662, at *8.

Sims first asserts that the "public interest" supports a transfer of venue because statistics show that the Northern District of Ohio disposes of cases faster than this Court. More specifically, Sims states that the time from filing to disposition of cases in 2007 was 10.6 months in the Northern District of Indiana, compared to 10.0 months in the Northern District of Ohio, and that the time from filing to trial was 21.5 months and 20.0 months, respectively. (Def.'s Br. 8-9 (citing www.uscourts.gov/cgi-bin/cmsd2007.pl).)  Indeed, though the variance is relatively minor in Sims's favor in this particular instance, "the interest of justice may be served by a transfer to a district where the litigants are more likely to receive a speedy trial." *Coffey*, 796 F.2d at 221 (collecting cases).

Sims further emphasizes that OmniSource expressly invoked provisions of Ohio law in its complaint, seeking recovery under the "Ohio conversion theory of damages" and alleging a cause of action for treble damages under the Ohio Revised Code. (Compl. ¶¶ 38, 47.)  Even if these issues of Ohio law are not necessarily complex, we believe that the Northern District of Ohio will be more readily familiar with the applicable law. *See Karrels*, 699 F. Supp. at 177; *but see Zucker v. Am. Greetings Corp*., No. 94 C 1844, 1995 WL 398933, at *4 (N.D. Ill. June 30, 1995) (concluding that the interests of justice did not require transfer where the law was relatively clear and straightforward); *see generally Anchor Wall Sys.*, 55 F. Supp. 2d at 873 ("District courts have broad discretion in denying or granting a motion to transfer under Section 1404(a).").  In fact, the Seventh Circuit Court of Appeals has recognized that in diversity cases, it is "advantageous to have federal judges try a case who are familiar with the applicable state law." *Coffee*, 796 F.2d at 221 (citing *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

15

In the end, after considering all of the relevant factors, the Court is convinced that the balance of the party and witness convenience and the paramount interests of justice in this instance "clearly" weigh in favor of the transfer of this action to the Northern District of Ohio.

## V.  CONCLUSION

For the foregoing reasons, Defendant Sims Brothers, Inc.'s Motion to Transfer Venue (Docket # 11) to the United States District Court for the Northern District of Ohio, Western Division, is hereby GRANTED.  SO ORDERED.

Enter for July 14, 2008.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge
